Law Division Motion Section Initial Case Management Dates for CALENDARS W,X,Y,Z,H,R,A,B will be heard in person.
All other Law Division Initial Case Management Dates will be heard via Zoom
For more information and Zoom Meeting IDs go to https://www.cookcountycourt.org/HOME?Zoom-Links?Agg4906_SelectTab/12
Court Date: 1/18/2024 9:00 AM

FILED
11/13/2023 1:15 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011538
Calendar, H
25180329

FILED DATE: 11/13/2023 1:15 PM   2023L011538

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

**Taylor Shepherd and Gregory Kovtelidakis, Individually and as Parents and Next Friends of Isaiah Kovtelidakis, a minor, and Grayson Kovtelidakis, a minor,**

**Plaintiffs,**

*versus*

**Volkswagen Group of America, Inc., Volkswagen of America, Inc., and Verizon Connect, Inc.,**

**Defendants.**

Court No.
**2023L011538**

**JURY DEMANDED**

## COMPLAINT AT LAW

Plaintiffs, TAYLOR SHEPHERD and GREGORY KOVTELIDAKIS, Individually and as Parents and Next Friends of ISAIAH KOVTELIDAKIS, a minor, and GRAYSON KOVTELIDAKIS, a minor, by and through their attorneys, TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC, complaining of Defendants, VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN OF AMERICA, INC., and VERIZON CONNECT, INC., state and allege as follows:

1. This action arises out of a violent carjacking and abduction that took place in Libertyville, Illinois, during which a 2021 Volkswagen Atlas containing two-year-old Isaiah Kovtelidakis, was stolen from the Plaintiffs' driveway. Plaintiffs bring this case against Defendants for claims arising from Defendants' refusal to provide the location of the stolen vehicle to law enforcement, even after being told of the violent abduction, until Plaintiffs reactivated their Car-Net subscription at the cost of $150.

## PARTIES, JURISDICTION, AND VENUE

1

Exhibit A

FILED DATE: 11/13/2023 1:15 PM   2023L011538

2.      Plaintiffs, TAYLOR SHEPHERD and GREGORY KOVTELIDAKIS, are individuals residing in Libertyville, Lake County, Illinois.  They are the natural parents of Plaintiffs, ISAIAH KOVTELIDAKIS, a minor, and GRAYSON KOVTELIDAKIS, a minor.

3.      Defendant, VOLKSWAGEN GROUP OF AMERICA, INC., ("Volkswagen," "Volkswagen Defendants," or collectively as "Defendants") is a corporation organized under the laws of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Defendant routinely and consistently does business in the State of Illinois and its financial services arm, VW Credit, Inc. has a physical office located at 1401 Franklin Boulevard, Libertyville, Illinois 60048.

4.      Defendant, VOLKSWAGEN OF AMERICA INC., ("Volkswagen," "Volkswagen Defendants," or collectively as "Defendants")—an operating division of VOLKSWAGEN GROUP OF AMERICA, INC.—is a corporation organized under the laws of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. Defendant routinely and consistently does business in the County of Cook and  State of Illinois.

5.      Defendant, VERIZON CONNECT INC., ("Verizon Connect" or collectively as "Defendants") is a corporation organized under the laws of Delaware, with its principal place of business located at 15055 North Point Parkway, Alpharetta, Georgia 30022.  Defendant routinely and consistently conducts business in the State of Illinois and has a physical office located at 1701 Golf Road, Tower 2, Suite #100, Rolling Meadows, Illinois 60008.

6.      The Court has general jurisdiction over this action because Defendants, VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN OF AMERICA, INC., and VERIZON CONNECT, INC., routinely and consistently conduct business in the County of Cook and State of Illinois.

7.     Venue is proper in Cook County because Defendant, VERIZON CONNECT, INC. conducts business there and has a physical office located in Cook County at 1701 Golf Rd., Tower 2, Suite #100, Rolling Meadows, Illinois 60008.

8.     Venue is proper in Cook County because the VOLKSWAGEN Defendants regularly engage in sales transactions, throughout the State of Illinois, including in Cook County.

## FACTUAL ALLEGATIONS

### The Violent Carjacking and Abduction of two-year-old Isaiah Kovtelidakis

9.     On February 23, 2023, at or around approximately 3:35 p.m., Plaintiff TAYLOR SHEPHERD, returned to her home in Libertyville, Illinois.   She had just taken Plaintiff GRAYSON KOVTELIDAKIS inside and was about to retrieve two-year-old Plaintiff ISAIAH KOVTELIDAKIS, when an assailant pulled up behind her 2021 Volkswagen Atlas.  The assailant violently beat TAYLOR SHEPHERD and knocked her to the ground, as she tried to keep ISAIAH safe.  He then stole the Volkswagen Atlas containing two-year-old ISAIAH KOVTELIDAKIS and fled, running over Plaintiff TAYLOR SHEPHERD and causing serious injuries to her pelvis and extremities.  Plaintiff TAYLOR SHEPHERD was four months pregnant at the time.

10.     Plaintiff TAYLOR SHEPHERD immediately called 911, and the call was received by the Lake County Sheriff's Office at approximately 3:37 p.m.  The police and ambulance arrived shortly thereafter.

11.     While searching for the stolen vehicle and endangered two-year-old child, a Deputy from the Lake County Sheriff's Office, contacted Defendants, VOLKSWAGEN and VERIZON CONNECT, and requested the GPS tracking and location data from PLAINTIFFS' 2021 Volkswagen Atlas. He explained the "extremely exigent" circumstances, namely that the stolen

FILED DATE: 11/13/2023 1:15 PM   2023L011538

2021 Volkswagen Atlas contained a two-year-old child who had just been violently abducted from his mother.

12. A representative for Defendants, VOLKSWAGEN and VERIZON CONNECT, confirmed that PLAINTIFFS' 2021 Volkswagen Atlas was equipped with Car-Net Services and that its location was capable of being ascertained. Defendants' representative, however, refused to provide law enforcement with the location data, because PLAINTIFFS' free trial period for Car-Net had expired. He informed the Deputy that a subscription payment of one hundred and fifty dollars ($150.00) was required before the location of the vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS could be released to law enforcement.

13. The Lake County Sheriff's Deputy reiterated that the situation was "life-or-death," however, the representative for VOLKSWAGEN and VERIZON CONNECT, again refused, stating there was nothing he could do until the subscription fee of one hundred and fifty dollars ($150.00) was paid— this was company policy, and there were no exceptions.

14. At or around approximately 4:25 p.m., the Lake County Sheriff's Deputy contacted Defendants, VOLKSWAGEN and VERIZON CONNECT, and provided the one hundred and fifty dollar ($150.00) subscription payment using the credit card provided by PLAINTIFFS. He then obtained the location of PLAINTIFFS' Volkswagen Atlas, which was located at or around approximately 4:46 p.m.

15. As a direct and proximate result of DEFENDANTS' demand for payment and/or refusal to cooperate with the police in, Plaintiffs, TAYLOR SHEPHERD, GREGORY KOVTELIDAKIS, and GRAYSON KOVTELIDAKIS, suffered extreme emotional distress.

16. As a direct and proximately result of DEFENDANTS' demand for payment and/or refusal to cooperate with the police, the process of locating the stolen Volkswagen Atlas containing

4

two-year-old Plaintiff ISAIAH KOVTELIDAKIS, was needlessly delayed by approximately forty (40) minutes. During that time Plaintiffs TAYLOR SHEPHERD, GREGORY KOVTELIDAKIS, and GRAYSON KOVTELIDAKIS, did not know whether ISAIAH KOVTELIDAKIS, who had just been violently abducted, was dead or alive, resulting in extreme emotional distress.

17. As a direct and proximate result of DEFENDANTS' demand for payment, the process of locating the stolen Volkswagen Atlas was delayed by approximately forty (40) minutes. During that time, Plaintiff ISAIAH KOVTELIDAKIS, was separated from his family, resulting in extreme emotional distress.

### Volkswagen Car-Net Subscription

18. At all times relevant, Car-Net was a registered trademark (US Registration No. 4472156) owned by Defendant, VOLKSWAGEN GROUP OF AMERICA, INC.

19. At all times relevant, Car-Net services were provided to consumers by Defendant VERIZON CONNECT, INC. on behalf of Defendants VOLKSWAGEN OF AMERICA, INC., and VOLKSWAGEN GROUP OF AMERICA, INC.

20. At all times relevant, the Car-Net Safe & Secure services provided by Defendants, VOLKSWAGEN and VERIZON CONNECT, required a paid subscription, at a cost of one hundred and fifty dollars ($150.00) per annum. Upon information and belief, the "Safe & Secure" subscription included emergency assistance, automatic crash notifications, anti-theft alerts, and stolen vehicle location assistance.

21. Upon information and belief, at all times relevant, VOLKSWAGEN Car-Net subscriptions, including the "Safe & Secure" subscription, were a key component of the VOLKSWAGEN Defendants' revenue and growth strategy.

22.    At all times relevant, Defendants, VOLKSWAGEN and VERIZON CONNECT, were permitted, under the Car-Net terms of service, to provide data, including, but not limited to, location data to law enforcement agencies, pursuant to validly issued subpoenas or similar judicial or law enforcement procedures, regardless of whether a subscription fee had been paid.

23.    At all times relevant, the VOLKSWAGEN Defendants and VERIZON CONNECT, INC., had instant access to real-time information regarding the PLAINTIFFS' 2021 Volkswagen Atlas, including the navigation history, speed, the route and direction of travel, and other live data concerning the use and location of the vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS.

24.    At all times relevant, the VOLKSWAGEN Defendants and VERIZON CONNECT, INC., had the ability to share real-time information regarding the PLAINTIFFS' 2021 Volkswagen Atlas, including the location with law enforcement.

25.    Upon information and belief, at all times relevant, the VOLKSWAGEN Defendants and VERIZON CONNECT, INC. were legally required to comply with law enforcement's request for the location of PLAINTIFFS' 2021 Volkswagen Atlas, regardless of whether the subscription fee had been paid.

### **Volkswagen Admits that the Demand for Subscription Payment was a "Serious Breach of the Process" and a "Process Failure"**

26.    Following the incident, the VOLKSWAGEN Defendants issued a public statement, via YouTube, regarding its refusal to provide law enforcement with the location data of the stolen vehicle containing the abducted two-year old Plaintiff ISAIAH KOVTELIDAKIS until a subscription fee of one hundred and fifty dollars ($150.00) had been paid.[1]

_____

[1] https://www.youtube.com/watch?v=S2TsN3nh5Xk

FILED DATE: 11/13/2023 1:15 PM    2023L011538

FILED DATE: 11/13/2023 1:15 PM    2023L011538

27.     Customer Experience Senior Vice President, Rachel Zaluzec, admitted that Volkswagen Car-Net's demand for payment is a "serious breach of the process" and a "process failure."

28.     Customer Experience Senior Vice President, Rachel Zaluzec, admitted that "law enforcement vehicle tracking was delayed due by breach in the Car-Net call center process, related to subscription payment."

29.     The response of Defendants, VOLKSWAGEN and VERIZON CONNECT, to the carjacking and abduction was not typical of the connected emergency services provided by other auto manufacturers in the industry. The policy of General Motor's OnStar for instance, is to "immediately" contact police and start tracking a car's location in the event of a carjacking or kidnapping[2]:

30.     Following the carjacking, Christopher Covelli, Deputy Chief of the Lake County Sheriff's Office, stated that most auto manufacturers willingly provide the GPS tracking and location data, so long as law enforcement officials affirm the request is "exigent in nature," which was affirmed in this case.

<u>**COUNT I – NEGLIGENCE (Vicarious Liability)**</u>
**(Taylor Shepherd v. Volkswagen Group of America, Inc.)**

1-30.   Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1- 30, as if fully re-stated herein.

31.     At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN GROUP OF AMERICA, INC.

---

[2] https://www.onstar.com/public-safety/emergency-situations

7

32. At all times relevant, the Car-Net Service Representative was acting within the scope of his or her employment, agency and/or service of and for VOLKSWAGEN GROUP OF AMERICA, INC.

33. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

34. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff TAYLOR SHEPHERD in particular, to exercise reasonable care to comply with law enforcement requests and provide the location data in the event of an emergency and/or exigent circumstances.

35. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

36. Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

8

a. Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

b. Failed to comply with law enforcement requests despite the exigent/emergency circumstances;

c. Obstructed an active law enforcement investigation;

d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

e. Failed to report the emergency law enforcement request up the supervisory chain of command.

37.     As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC s, in the amount in excess of fifty thousand dollars ($50,000).

## COUNT II – NEGLIGENCE (Direct Liability)
### (Taylor Shepherd v. Volkswagen Group of America, Inc.)

1-37.     Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 37, as if fully re-stated herein.

38.     At all times relevant, it was the decision of VOLKSWAGEN GROUP OF AMERICA, INC, to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service requiring an annual subscription payment.

39.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must

9

be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

40.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

41.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

42.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

43.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

44.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

45.     Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

   a.  Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

   b.  Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

FILED DATE: 11/13/2023 1:15 PM   2023L011538

    c.   Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

    d.   Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

    e.   Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

46.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Taylor Shepherd v. Volkswagen Group of America, Inc.)

1-46.    Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 46, as if fully re-stated herein.

47.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

48.    VOLKSWAGEN GROUP OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we won't provide you with the location of your abducted child.

49.    VOLKSWAGEN GROUP OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

50.    At all times relevant, the conduct of VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

51.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

52.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

53.    As a direct and proximate result of the VOLKSWAGEN GROUP OF AMERICA, INC.'s conduct, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC, in the amount in excess of fifty thousand dollars ($50,000).

### COUNT IV – NEGLIGENCE (Vicarious Liability)
### (Gregory Kovtelidakis v. Volkswagen Group of America, Inc.)

1-53.   Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1- 53, as if fully re-stated herein.

54.   At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN GROUP OF AMERICA, INC.

55.   At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN GROUP OF AMERICA, INC.

56.   At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide such information to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious physical injury.

57.   At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkwagen consuming public in general, and Plaintiff GREGORY KOVTELIDAKIS, in particular, to exercise reasonable care to comply with law enforcement requests and provide location data in the event of an emergency and/or exigent circumstances.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

FILED DATE: 11/13/2023 1:15 PM   2023L011538

58.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS, as there were "exigent circumstances."

59.     Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

    a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

    b.  Failed to legally comply with law enforcement requests despite exigent circumstances;

    c.  Obstructed an active law enforcement investigation;

    d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

    e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

60.     As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT V- NEGLIGENCE (Direct Liability)

14

FILED DATE: 11/13/2023 1:15 PM   2023L011538

**(Gregory Kovtelidakis v. Volkswagen Group of America, Inc.)**

1-60.    Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 60, as if fully re-stated herein.

61.    At all times relevant, it was the decision of VOLKSWAGEN GROUP OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

62.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

63.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

64.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

65.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

66.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

67.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

68.     Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

a.  Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b.  Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c.  Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d.  Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

e.  Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

69.     As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC, in the amount in excess of fifty thousand dollars ($50,000).

**COUNT VI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

FILED DATE: 11/13/2023 1:15 PM 2023L011538

**(Gregory Kovtelidakis v. Volkswagen Group of America, Inc.)**

1-69. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 69, as if fully re-stated herein.

70. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) dollars was paid.

71. VOLKSWAGEN GROUP OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

72. VOLKSWAGEN GROUP OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

73. At all times relevant, the conduct of VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

74. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

75. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

76. As a direct and proximate result of VOLKSWAGEN GROUP OF AMERICA, INC.'s conduct, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT VII – NEGLIGENCE (Vicarious Liability)
### (Isaiah Kovtelidakis v. Volkswagen Group of America, Inc.)

1-76. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-76, as if fully re-stated herein.

77. At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN GROUP OF AMERICA, INC.

78. At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN GROUP OF AMERICA, INC.

79. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

80.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkwagen consuming public in general, and Plaintiff ISAIAH KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

81.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

82.     Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

      a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

      b.  Failed to legally comply with law enforcement requests despite exigent circumstances;

      c.  Obstructed an active law enforcement investigation;

      d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

      e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

83.     As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff ISAIAH KOVTELIDAKIS suffered

FILED DATE: 11/13/2023 1:15 PM 2023L011538

injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT VIII – NEGLIGENCE (Direct Liability)
### (Isaiah Kovtelidakis v. Volkswagen Group of America, Inc.)

1-83.  Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 83, as if fully re-stated herein.

84.  At all times relevant, it was the decision of VOLKSWAGEN GROUP OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

85.  At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

86.  At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

87.  At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

88.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

89.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

90.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

91.    Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

a.  Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b.  Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c.  Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d.  Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

e.  Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

92.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Isaiah Kovtelidakis v. Volkswagen Group of America, Inc.)

1-92.    Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 92, as if fully re-stated herein.

93.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

94.    VOLKSWAGEN GROUP OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

95.    VOLKSWAGEN GROUP OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

96.    At all times relevant, the conduct of VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

97.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net

Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as two-year-old ISAIAH KOVTELIDAKIS did not know whether he would be safely returned to his family.

98.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

99.     As a direct and proximate result of VOLKSWAGEN GROUP OF AMERICA, INC.'s conduct, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT X – NEGLIGENCE (Vicarious Liability)
**(Grayson Kovtelidakis v. Volkswagen Group of America, Inc.)**

1-99.     Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1- 99, as if fully re-stated herein.

100.     At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN GROUP OF AMERICA, INC.

101.     At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN GROUP OF AMERICA, INC.

102.     At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing

23

FILED DATE: 11/13/2023 1:15 PM    2023L011538

FILED DATE: 11/13/2023 1:15 PM    2023L011538

two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

103.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff GRAYSON KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

104.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

105.    Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

    a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

    b.  Failed to legally comply with law enforcement requests despite exigent circumstances;

    c.  Obstructed an active law enforcement investigation;

    d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

    e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

106.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XI- NEGLIGENCE (Direct Liability)
### (Grayson Kovtelidakis v. Volkswagen Group of America, Inc.)

1-106. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 106, as if fully re-stated herein.

107.    At all times relevant, it was the decision of VOLKSWAGEN GROUP OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

108.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

109.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

110.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

111.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

112.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

113.    At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

114.    Notwithstanding the aforementioned duties, VOLKSWAGEN GROUP OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

   a.    Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

   b.    Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

   c.    Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

   d.    Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

   e.    Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

115.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN GROUP OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS

suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Grayson Kovtelidakis v. Volkswagen Group of America)

1-115. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1 through 115, as if fully re-stated herein.

116.   At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

117.   VOLKSWAGEN GROUP OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

118.   VOLKSWAGEN GROUP OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

119.   At all times relevant, the conduct of VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

120. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

121. At all times relevant, VOLKSWAGEN GROUP OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

122. As a direct and proximate result of VOLKSWAGEN GROUP OF AMERICA, INC.'s conduct, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN GROUP OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XIII – NEGLIGENCE (Vicarious Liability)
### (Taylor Shepherd v. Volkswagen of America, Inc.)

1-122. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-122, as if fully re-stated herein.

123. At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN OF AMERICA, INC.

124. At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN OF AMERICA, INC.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

125.   At all times relevant, VOLKSWAGEN OF AMERICA, INC, by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

126.   At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff TAYLOR SHEPHERD in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

127.   At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

128.   Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

   a.   Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

   b.   Failed to legally comply with law enforcement requests despite exigent circumstances;

   c.   Obstructed an active law enforcement investigation;

FILED DATE: 11/13/2023 1:15 PM   2023L011538

d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

e. Failed to report the emergency law enforcement request up the supervisory chain of command.

129. As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC s, in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XIV- NEGLIGENCE (Direct Liability)
### (Taylor Shepherd v. Volkswagen of America, Inc.)

1-129. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-129, as if fully re-stated herein.

130. At all times relevant, it was the decision of VOLKSWAGEN OF AMERICA, INC, to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

131. At all times relevant, VOLKSWAGEN OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

132. At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or

FILED DATE: 11/13/2023 1:15 PM   2023L011538

employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

133.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

134.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

135.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

136.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

137.    Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

a.   Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b.   Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c.   Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d.   Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

e.   Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

31

138.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Taylor Shepherd v. Volkswagen of America, Inc.)

1-138. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-138, as if fully re-stated herein.

139.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

140.    VOLKSWAGEN OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

141.    VOLKSWAGEN OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

FILED DATE: 11/13/2023 1:15 PM    2023L011538

142.    At all times relevant, the conduct of VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

143.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

144.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

145.    As a direct and proximate result of the VOLKSWAGEN OF AMERICA, INC.'s conduct, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC, in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XVI – NEGLIGENCE (Vicarious Liability)
### (Gregory Kovtelidakis v. Volkswagen of America, Inc.)

1-145. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-145, as if fully re-stated herein.

146.    At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN OF AMERICA, INC.

147.     At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN OF AMERICA, INC.

148.     At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

149.     At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff GREGORY KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

150.     At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

151.     Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

   a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

34

FILED DATE: 11/13/2023 1:15 PM  2023L011538

    b.  Failed to legally comply with law enforcement requests despite exigent circumstances;

    c.  Obstructed an active law enforcement investigation;

    d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

    e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

152.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XVII – NEGLIGENCE (Direct Liability)
### (Gregory Kovtelidakis v. Volkswagen of America, Inc.)

1-152. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-152, as if fully re-stated herein.

153.    At all times relevant, it was the decision of VOLKSWAGEN OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

154.    At all times relevant, VOLKSWAGEN OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

35

155.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

156.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

157.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

158.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

159.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

160.    Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

   a.   Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

   b.   Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

   c.   Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

FILED DATE: 11/13/2023 1:15 PM 2023L011538

    d.   Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request;

    e.   Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

161.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC, in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XVIII- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Gregory Kovtelidakis v. Volkswagen of America, Inc.)

1-161. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-161, as if fully re-stated herein.

162.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

163.    VOLKSWAGEN OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we won't provide you with the location of your abducted child.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

164.    VOLKSWAGEN OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

165.    At all times relevant, the conduct of VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

166.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

167.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

168.    As a direct and proximate result of VOLKSWAGEN OF AMERICA, INC.'s conduct, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

**COUNT XIX – NEGLIGENCE (Vicarious Liability)**
**(Isaiah Kovtelidakis v. Volkswagen of America, Inc.)**

38

FILED DATE: 11/13/2023 1:15 PM    2023L011538

1-168. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-168, as if fully re-stated herein.

169.    At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN OF AMERICA, INC.

170.    At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN OF AMERICA, INC.

171.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

172.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff ISAIAH KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

173.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

174.    Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including

39

the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

    a. Failed to timely provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

    b. Failed to legally comply with law enforcement requests despite exigent circumstances;

    c. Obstructed an active law enforcement investigation;

    d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

    e. Failed to report the emergency law enforcement request up the supervisory chain of command.

175    As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XX – NEGLIGENCE (Direct Liability)
### (Isaiah Kovtelidakis v. Volkswagen of America, Inc.)

1-175. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-175, as if fully re-stated herein.

176.    At all times relevant, it was the decision of VOLKSWAGEN OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

FILED DATE: 11/13/2023 1:15 PM 2023L011538

FILED DATE: 11/13/2023 1:15 PM 2023L011538

177.    At all times relevant, VOLKSWAGEN OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

178.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

179.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

180.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

181.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

182.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

183.    Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

a. Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b. Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c. Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d. Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

e. Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

184. As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XXI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Isaiah Kovtelidakis v. Volkswagen of America, Inc.)

1-184. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-184, as if fully re-stated herein.

185. At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law

42

FILED DATE: 11/13/2023 1:15 PM    2023L011538

enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

186. VOLKSWAGEN OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

187. VOLKSWAGEN OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

188. At all times relevant, the conduct of VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

189. At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as two-year-old ISAIAH KOVTELIDAKIS did not know whether he would be safely returned to his family.

190. At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

191. As a direct and proximate result of VOLKSWAGEN OF AMERICA, INC.'s conduct, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

<u>**COUNT XXII – NEGLIGENCE (Vicarious Liability)**</u><br>**(Grayson Kovtelidakis v. Volkswagen of America, Inc.)**

1-191. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-191, as if fully re-stated herein.

192.    At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VOLKSWAGEN OF AMERICA, INC.

193.    At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VOLKSWAGEN OF AMERICA, INC.

194.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

195.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Volkswagen consuming public in general, and Plaintiff GRAYSON KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

196. At all times relevant, VOLKSWAGEN G OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS, as there were "exigent circumstances."

197. Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

a. Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

b. Failed to legally comply with law enforcement requests despite exigent/emergency circumstances;

c. Obstructed an active law enforcement investigation;

d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

e. Failed to report the emergency law enforcement request up the supervisory chain of command.

198. As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

FILED DATE: 11/13/2023 1:15 PM   2023L011538

FILED DATE: 11/13/2023 1:15 PM   2023L011538

## COUNT XXIII – NEGLIGENCE (Direct Liability)
### (Grayson Kovtelidakis v. Volkswagen of America, Inc.)

1-198.    Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-198, as if fully re-stated herein.

199.    At all times relevant, it was the decision of VOLKSWAGEN OF AMERICA, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

200.    At all times relevant, VOLKSWAGEN OF AMERICA, INC, had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

201.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

202.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

203.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

204.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

205.    At all times relevant, VOLKSWAGEN OF AMERICA, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

206.    Notwithstanding the aforementioned duties, VOLKSWAGEN OF AMERICA, INC, did commit one or more, or all of the following negligent acts or omissions:

    a.  Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

    b.  Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

    c.  Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

    d.  Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

    e.  Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

207.    As a direct and proximate result of one or more, or all, of VOLKSWAGEN OF AMERICA, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

**COUNT XXIV – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

FILED DATE: 11/13/2023 1:15 PM    2023L011538

**(Grayson Kovtelidakis v. Volkswagen of America, Inc.)**

1-207. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-207, as if fully re-stated herein.

208.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

209.    VOLKSWAGEN OF AMERICA, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

210.    VOLKSWAGEN OF AMERICA, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

211.    At all times relevant, the conduct of VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

212.    At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

FILED DATE: 11/13/2023 1:15 PM 2023L011538

213. At all times relevant, VOLKSWAGEN OF AMERICA, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

214. As a direct and proximate result of VOLKSWAGEN OF AMERICA, INC.'s conduct, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VOLKSWAGEN OF AMERICA, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXV – NEGLIGENCE (Vicarious Liability)
### (Taylor Shepherd v. Verizon Connect, Inc.)

1-214. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-214, as if fully re-stated herein.

215. At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of the VERIZON CONNECT, INC.

216. At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for the VERIZON CONNECT, INC.

217. At all times relevant, the VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

218. At all times relevant the VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Car-Net Service consuming public in general, and Plaintiff TAYLOR SHEPHERD in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

219. At all times relevant the VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS, as there were "exigent circumstances."

220. Notwithstanding the aforementioned duties, the VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

    a. Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

    b. Failed to legally comply with law enforcement requests despite exigent/emergency circumstances;

    c. Obstructed an active law enforcement investigation;

    d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

    e. Failed to report the emergency law enforcement request up the supervisory chain of command.

221. As a direct and proximate result of one or more, or all, of the VERIZON CONNECT, INC.'s negligent acts or omissions, Plaintiff TAYLOR SHEPHERD suffered injuries

FILED DATE: 11/13/2023 1:15 PM    2023L011538

of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

<u>**COUNT XXVI – NEGLIGENCE (Direct Liability)**</u>
**(Taylor Shepherd v. Verizon Connect, Inc.)**

1-221. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-221, as if fully re-stated herein.

222.    At all times relevant, it was the decision of VERIZON CONNECT, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

223.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

224.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

225.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

226. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

227. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

228. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

229. Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., did commit one or more, or all of the following negligent acts or omissions:

a. Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b. Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c. Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d. Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request:

e. Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

230. As a direct and proximate result of one or more, or all, of the VOLKSWAGEN Defendants' negligent acts or omission, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XXVII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Taylor Shepherd v. Verizon Connect, Inc.)

1-230. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-230, as if fully re-stated herein.

231.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) dollars was paid.

232.    VERIZON CONNECT, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

233.    VERIZON CONNECT, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

234.    At all times relevant, the conduct of VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

235.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

236. At all times relevant, VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

237. As a direct and proximate result of the VERIZON CONNECT, INC.'s conduct, Plaintiff TAYLOR SHEPHERD suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact her to this day.

WHEREFORE, Plaintiff, TAYLOR SHEPHERD, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXVIII – NEGLIGENCE (Vicarious Liability)
### (Gregory Kovtelidakis v. Verizon Connect, Inc.)

1-237. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-237, as if fully re-stated herein.

238. At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VERIZON CONNECT, INC.

239. At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VERIZON CONNECT, INC.

240. At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials, even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

241.     At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Car-Net Service consuming public in general, and Plaintiff GREGORY KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

242.     At all times relevant VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

243.     Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

   a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

   b.  Failed to legally comply with law enforcement requests despite exigent/emergency circumstances;

   c.  Obstructed an active law enforcement investigation;

   d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

   e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

244.     As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omissions, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

55

FILED DATE: 11/13/2023 1:15 PM    2023L011538

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXIX – NEGLIGENCE (Direct Liability)
### (Gregory Kovtelidakis v. Verizon Connect, Inc.)

1-244. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-244, as if fully re-stated herein.

245.    At all times relevant, it was the decision of VERIZON CONNECT, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

246.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

247.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

248.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

FILED DATE: 11/13/2023 1:15 PM    2023L011538

249. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

250. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

251. At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

252. Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., did commit one or more, or all of the following negligent acts or omissions:

    a. Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

    b. Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

    c. Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

    d. Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request;

Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

253. As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omission, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

FILED DATE: 11/13/2023 1:15 PM 2023L011538

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Gregory Kovtelidakis v. Verizon Connect, Inc.)**

1-253. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-253, as if fully re-stated herein.

254.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

255.    VERIZON CONNECT, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

256.    VERIZON CONNECT, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

257.    At all times relevant, the conduct of VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

258.    At all times relevant, VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative,

knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

259.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

260.    As a direct and proximate result of VERIZON CONNECT, INC.'s conduct, Plaintiff GREGORY KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GREGORY KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXXI – NEGLIGENCE (Vicarious Liability)
### (Isaiah Kovtelidakis v. Verizon Connect, Inc.)

1-260. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-260, as if fully re-stated herein.

261.    At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VERIZON CONNECT, INC.

262.    At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VERIZON CONNECT, INC.

263.    At all times relevant, VERIZON CONNECT, INC., by and through their authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials,

even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

264.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Car-Net Services consuming public in general, and Plaintiff ISAIAH KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

265.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

266.    Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

a. Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

b. Failed to legally comply with law enforcement requests despite exigent circumstances;

c. Obstructed an active law enforcement investigation;

d. Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

e. Failed to report the emergency law enforcement request up the supervisory chain of command.

267.    As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omissions, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a

FILED DATE: 11/13/2023 1:15 PM    2023L011538

personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XXXII- NEGLIGENCE (Direct Liability)
### (Isaiah Kovtelidakis v. Verizon Connect, Inc.)

1-267. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-267, as if fully re-stated herein.

268.  At all times relevant, it was the decision of VERIZON CONNECT, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

269.  At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

270.  At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

271.  At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

FILED DATE: 11/13/2023 1:15 PM   2023L011538

272.   At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

273.   At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

274.   At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

275.   Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., did commit one or more, or all of the following negligent acts or omissions:

a.   Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b.   Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c.   Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d.   Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request;

e.   Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

276.   As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omission, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against the VOLKSWAGEN Defendants, in the amount in excess of fifty thousand dollars ($50,000).

## COUNT XXXIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Isaiah Kovtelidakis v. Verizon Connect, Inc.)

1-276. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-276, as if fully re-stated herein.

277.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

278.    VERIZON CONNECT, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

279.    VERIZON CONNECT, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

280.    At all times relevant, the conduct VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

281.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew that the demand for payment would cause extreme and severe and emotional distress, as two-

FILED DATE: 11/13/2023 1:15 PM    2023L011538

year-old ISAIAH KOVTELIDAKIS did not know whether he would be safely returned to his family.

282. At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

283. As a direct and proximate result of VERIZON CONNECT, INC.'s conduct, Plaintiff ISAIAH KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, ISAIAH KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXXIV – NEGLIGENCE (Vicarious Liability)
### (Grayson Kovtelidakis v. Verizon Connect, Inc.)

1-283. Plaintiff restates and realleges the statements and allegations contained in Paragraph Nos. 1-283, as if fully re-stated herein.

284. At all times relevant, the Car-Net Service Representative was an authorized agent, apparent agent, servant and/or employee of VERIZON CONNECT, INC.

285. At all times relevant, the Car-Net Service Representative acted within the scope of his employment, agency and/or service of and for VERIZON CONNECT, INC.

286. At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location data to law enforcement officials,

even though there were exigent circumstances and such data was necessary to protect life and/or prevent serious injury.

287.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, owed a duty of ordinary care to the Car-Net Service consuming public in general, and Plaintiff GRAYSON KOVTELIDAKIS, in particular, to exercise reasonable care to provide location data to law enforcement officials, in the event of an emergency and/or exigent circumstances.

288.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, had a duty to provide location data and other information to law enforcement officials, regardless of whether the subscription fee had been paid by PLAINTIFFS.

289.    Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants, and/or employees, including the Car-Net Service Representative, did commit one or more, or all of the following negligent acts or omissions:

  a.  Failed to timely and properly provide the location data of the stolen vehicle containing two-year-old Plaintiff Isaiah Kovtelidakis;

  b.  Failed to legally comply with law enforcement requests despite exigent circumstances;

  c.  Obstructed an active law enforcement investigation;

  d.  Violated Volkswagen Car-Net's own policies and procedures regarding emergency law enforcement requests;

  e.  Failed to report the emergency law enforcement request up the supervisory chain of command.

290.    As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a

FILED DATE: 11/13/2023 1:15 PM   2023L011538

FILED DATE: 11/13/2023 1:15 PM   2023L011538

personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against the VOLKSWAGEN Defendants, in the amount in excess of fifty thousand dollars ($50,000).

**COUNT XXXV – NEGLIGENCE (Direct Liability)**
**(Grayson Kovtelidakis v. Verizon Connect, Inc.)**

1-290. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-290, as if fully re-stated herein.

291.    At all times relevant, it was the decision of VERIZON CONNECT, INC., to make the Car-Net Stolen Vehicle Location Assistance Service, a subscription-based service, requiring an annual subscription payment.

292.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in drafting and implementing the policies and procedures to be followed by Car-Net Service representatives, delineating under what circumstances the location data must be provided to law enforcement officials without a subscription—e.g., emergency law enforcement requests and/or exigent circumstances.

293.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care, in ensuring that its authorized agents, apparent agents, servants and/or employees, including, but not limited to, Car-Net Service representatives, complied with applicable Car-Net Service processes, protocols, policies, and procedures when responding to emergency law enforcement requests.

294.    At all times relevant, VERIZON CONNECT, INC., had a duty to exercise reasonable care in the training and supervision of Car-Net Service representatives.

66

FILED DATE: 11/13/2023 1:15 PM    2023L011538

295.    At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in drafting and enforcing the policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests.

296.    At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in training Car-Net Service representatives to timely and properly respond to emergency law enforcement requests.

297.    At all times relevant, VERIZON CONNECT, INC. had a duty to be free of negligence in supervising Car-Net Service representatives when responding to emergency law enforcement requests.

298.    Notwithstanding the aforementioned duties, VERIZON CONNECT, INC., did commit one or more, or all of the following negligent acts or omissions:

a.  Failed to draft, implement, and adopt clear and effective policies to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

b.  Failed to adequately enforce the policies and procedures to be followed by Car-Net Service representatives when responding to emergency law enforcement requests;

c.  Failed to adequately and properly train the Car-Net Service representative how to respond to emergency law enforcement requests;

d.  Failed to adequately and properly supervise the Car-Net Service representative during an emergency law enforcement request;

e.  Failed to provide an effective "Chain of Command" for representatives handling emergency law enforcement requests.

299.    As a direct and proximate result of one or more, or all, of VERIZON CONNECT, INC.'s negligent acts or omissions, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

### COUNT XXXVI – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**(Grayson Kovtelidakis v. Verizon Connect, Inc.)**

1-299. Plaintiffs restate and re-allege the statements and allegations contained in Paragraph Nos. 1-299, as if fully re-stated herein.

300.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, knew or should have known the location of the stolen vehicle containing abducted two-year-old Plaintiff ISAIAH KOVTELIDAKIS, but refused to provide the location to law enforcement officials, until a subscription payment of one hundred and fifty dollars ($150.00) was paid.

301.    VERIZON CONNECT, INC.'s demand for payment was tantamount to a ransom demand—pay the subscription fee to reactivate your Car-Net subscription or we will not provide you with the location of your abducted child.

302.    VERIZON CONNECT, INC. profited from the kidnapping and abduction of two-year-old Plaintiff ISAIAH KOVTELIDAKIS by virtue of the one hundred and fifty dollar ($150.00) subscription payment provided by PLAINTIFFS.

303.    At all times relevant, the conduct VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, was extreme and outrageous.

304.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative,

FILED DATE: 11/13/2023 1:15 PM    2023L011538

knew that the demand for payment would cause extreme and severe and emotional distress, as PLAINTIFFS did not know whether two-year-old ISAIAH KOVTELIDAKIS was alive or dead.

305.    At all times relevant, VERIZON CONNECT, INC., by and through its authorized agents, apparent agents, servants and/or employees, including the Car-Net Service Representative, consciously disregarded the probability of causing emotional distress.

306.    As a direct and proximate result of the VERIZON CONNECT, INC.'s conduct, Plaintiff GRAYSON KOVTELIDAKIS suffered injuries of a personal and pecuniary nature, including, but not limited to, extreme and serious emotional and psychological injuries, which still impact him to this day.

WHEREFORE, Plaintiff, GRAYSON KOVTELIDAKIS, respectfully prays from judgment against VERIZON CONNECT, INC., in the amount in excess of fifty thousand dollars ($50,000).

Respectfully submitted,

By:

**Taxman, Pollock, Murray & Bekkerman, LLC**
Gerald J. Bekkerman
Colleen Mixan Mikaitis
Sarah Riess
225 West Wacker Drive, Suite 1750
Chicago, Illinois 60606
Phone: (312) 586-1700
Fax: (312) 586-1701
gbekkerman@tpmblegal.com
cmixan@tpmblegal.com
sriess@tpmblegal.com

FILED DATE: 11/13/2023 1:15 PM    2023L011538

FILED
11/13/2023 1:15 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023L011538
Calendar, H

FILED DATE: 11/13/2023 1:15 PM   2023L011538

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| **Taylor Shepherd and Gregory Kovtelidakis, Individually and as Parents and Next Friends of Isaiah Kovtelidakis, a minor, and Grayson Kovtelidakis, a minor,** | **2023L011538** |
| **Plaintiffs,** | **Court No:** |
| *versus* | **JURY DEMANDED** |
| **Volkswagen Group of America, Inc., Volkswagen of America, Inc., and Verizon Connect, Inc.,** | |
| **Defendants.** | |

## AFFIDAVIT

Gerlad J. Bekkerman , being first sworn on oath, deposes and states the following:

1.      I am an attorney for the law firm of Taxman, Pollock, Murray & Bekkerman, LLC, an Illinois Professional Corporation, and licensed to practice law in Illinois. If called to testify, I would competently testify as to the contents of this Affidavit.

2.      I represent the Plaintiffs in the Complaint at Law attached to this Affidavit.

3.      As a result of the Defendants' negligence described in the attached Complaint at Law, the Plaintiffs suffered severe injury.

4.      Based upon the injuries of the Plaintiffs, the total amount of money damages sought by the Plaintiffs exceeds $50,000.00.

Under the penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes same to be true.

/s/Gerald J. Bekkerman
Attorneys for the Plaintiff

Gerald J. Bekkerman (gbekkerman@tpmblegal.com)
Colleen Mixan Mikaitis (cmixan@tpmblegal.com )
Sarah Riess (sriess@tpmblegal.com)
**TAXMAN, POLLOCK, MURRAY & BEKKERMAN, LLC**
225 West Wacker Drive, Suite 1650
Chicago, Illinois 60606
P: (312) 586-1700 F: (312) 586-1701
Firm No. 61090