**A**<small>H</small> **I**<small>N</small> **T**<small>HE</small> **U**<small>NITED</small> **S**<small>TATES</small> **D**<small>ISTRICT</small> **C**<small>OURT</small>
**<small>FOR THE</small> N**<small>ORTHERN</small> **D**<small>ISTRICT OF</small> **I**<small>LLINOIS</small>
**E**<small>ASTERN</small> **D**<small>IVISION</small>

| | |
|---|---|
| TAYLOR SHEPHERD and GREGORY KOVTELIDAKIS, individually and as Parents and Next Friends of ISAIAH KOVTELIDAKIS, a minor<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., BOSCH SECURITY SERVICES, INC., RANDSTAD NORTH AMERICA, and ERMITHE PETIT,<br><br>Defendants. | No. 23-cv-16819<br><br>Judge Franklin U. Valderrama |

**O**<small>RDER</small>

Before the Court is Defendant Volkswagen Group of America, Inc.'s (Volkswagen) motion to dismiss [35]. Also before the Court is Defendant Bosch Security Systems, Inc.'s (Bosch) motion for joinder and to dismiss [40] and Defendant Randstad North America, Inc. and Ermithe Petit's (collectively, Randstad) motion to dismiss [95]. Bosch and Randstad both join Volkswagen's motion to dismiss and reply, and thus the Court only addresses the arguments made in Volkswagen's motion. For the reasons that follow, Defendants' motions [35] [40] [95] are denied.

This case stems from a carjacking, in which individuals attacked Plaintiff Taylor Shepherd ("Shepherd") and fled in her Volkswagen Atlas. R. 71, Second Amended Complaint (SAC) ¶ 9. At the time, however, Shepherd's two-year-old son was in the car. *Id.* During the emergency response, Plaintiffs allege that a Lake County Sheriff's Deputy placed a call to Volkswagen, as it provided a subscription-based service known as Car-Net, which was capable of providing stolen vehicle location assistance to paid subscribers. *Id.* ¶ 11. However, Defendants' representative did not provide law enforcement with the location data because Shepherd's free trial period for Car-Net had expired. *Id.* ¶ 12. Plaintiffs sued Volkswagen, Bosch, and Randstad (collectively, Defendants) for negligence and intentional infliction of emotional distress. *See generally*, SAC. Defendants argue that the Court should dismiss Plaintiffs' common-law negligence claims because Defendants did not owe Plaintiffs a legal duty pursuant to the Car-Net Terms of Service (TOS). R. 35, Mot.

Dismiss, at 5. Defendants' argument hinges on the Court's consideration of the TOS, which Defendants attached to their motion to dismiss. Mot. Dismiss, Exh. A.

Generally, a court "cannot consider evidence outside the pleadings to decide a motion to dismiss without converting it into a motion for summary judgment." *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018). There are exceptions to this general rule. One such exception is the doctrine of incorporation by reference. *Adamas v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2014). Under this narrow exception, a court may consider extraneous materials on a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [the] claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (cleaned up). While the SAC indeed references the TOS, the Court finds that it is not central to Plaintiffs' complaint. As Plaintiffs correctly assert, the SAC does not allege any violation of the TOS nor does it seek to assert any contractual right contained in the TOS. Accordingly, the Court may not consider the TOS in resolving Defendants' motion.

The Court now turns to whether Plaintiffs have sufficiently alleged a duty of care. Plaintiffs argue that, pursuant to the traditional duty analysis, they have alleged sufficient facts to impose an independent duty of reasonable care upon Defendants. R. 43, Resp., at 5. Under the traditional duty analysis, four factors are relevant to whether a duty exists: (1) the reasonable foreseeability of the plaintiff's injury; (2) the reasonable likelihood of the injury; (3) the magnitude of the defendant's burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *LaFever v. Kremlite Co.*, 706 N.E. 2d 441, 446 (Ill. 1998). "The existence of a duty turns in large part on considerations of public policy." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006). In reply, Defendants double-down and argue that any duty of care is determined by the TOS. R. 49, Reply, at 2–4. For the reasons already explained, this argument is a non-starter. And while Defendants focus on Plaintiffs' lack of citations to authority in support of establishing an independent legal duty here, Defendants do not meaningfully engage in the traditional duty analysis. *Id.* at 5. The Court will not do that work for them. *Russell v. Chism*, 2017 WL 3478817, at *7 (N.D. Ill. Aug. 14, 2017) ("It is not the duty of the court to make parties' arguments for them."). Accordingly, the Court denies Defendants' motion to dismiss on this basis.

Defendants next argue that Plaintiffs' negligence claims fail because "Illinois law requires plaintiffs' distress to be tied to immediate physical injury or physical impact caused by the defendant." Mot. Dismiss at 11–12 (citing *Choi v. Chase Manhattan Mortg. Co.*, 63 F. Supp. 2d 874, 887-88 (N.D. Ill. 1999); *In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979*, 507 F. Supp. 21, 23 (N.D. Ill. 1980); G*illman v. Burlington Northern R. Co.*, 878 F.2d 1020, 1023–24 (7th Cir. 1989). Plaintiffs correctly respond that the cases to which Defendants cite all involve claims for negligent infliction of emotional distress, which Plaintiffs do not plead. Resp. at 11–12. Defendants, for the first time in reply, argue that "Illinois follows the

Restatement relative to negligence resulting in only emotional disturbances." Reply at 8. Defendants then point to the Restatement (Second) of Torts § 436A, which provides that an actor is not liable for negligence if that negligence "results in emotional disturbance alone, without bodily harm . . . ." Restatement (Second) of Torts § 436A. Although the Court typically does not address arguments raised for the first time on reply, it will do so here for the sake of completeness. In citing to the Restatement, Defendants notably fail to address the commentary of § 436A that states "even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character." *Id.*, cmt. c. (1965); *see also Kingdom Auth. Int'l Ministries v. City of Rockford*, 2017 WL 4405061, \*17 (Ill. App. Ct. 2017) ("[M]ental illness and prolonged symptoms resulting from emotional distress, such as nausea and headaches, may satisfy the physical or bodily harm requirement in Illinois."). Throughout their complaint, Plaintiffs allege "extreme and serious emotional and psychological injuries, which still impact [them] to this day." *See generally*, SAC. Whether these psychological injuries indeed rise to the level of physical or bodily harm is a question for another day. Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' negligence claims.

Defendants, with the last arrow in their quiver, argue that Plaintiffs have failed to sufficiently allege intentional infliction of emotional distress (IIED). "[T]o plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts to establish: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe emotional distress." *Phelps v. Illinois Dep't of Corr.*, 2023 WL 4029896, at \*12 (N.D. Ill. June 15, 2023) (citing *Bianchi v. McQueen,* 58 N.E.3d 680, 699 (Ill. App. Ct. 2016)). First, Defendants contend that Plaintiffs fail to allege that Defendants' alleged conduct was extreme and outrageous. In Illinois, "extreme and outrageous behavior requires conduct that goes beyond all possible bounds of decency, such that a reasonable person would hear the facts and be compelled to feelings of resentment and outrage." *Id.* Plaintiffs, of course, assert that "[it] goes beyond all bounds of decency and is intolerable in a civilized community to actively resist police efforts to rescue an abducted baby, especially when the assistance needed is readily available and causes absolutely no hardship for the person or organization providing it. Resp. at 13 (cleaned up). The Court agrees with Plaintiffs, without deciding, that this behavior may serve as the basis for an IIED claim.

Second, Defendants contend that Plaintiffs fail to allege that Defendants had the requisite intent to commit IIED. Resp. at 14. Specifically, Defendants posit that Plaintiffs do not plead intent because they (1) "fail to allege they were present for the conversation between the Lake County Sheriff's Deputy and Car-Net Representative" and (2) "that the Car-Net representative knew the Plaintiffs." *Id.* at 15 (citing *Lopez Colunga v. Advoc. Health & Hosps. Corp.*, 232 N.E.3d 72 (Ill. App. Ct. 2023) ("A

3

defendant cannot be liable for intentional infliction of emotional distress to a plaintiff who is unknown to the defendant and is not present."). The Court disagrees. First, Defendants' focus on Plaintiffs' presence is misplaced, as "[IIED] claims . . . do not require 'presence' under Illinois law." *Lopez*, 232 N.E.3d 72, 77. Second, as Plaintiffs correctly note, they need only allege the Car-Net representative had "knowledge of at least the person who is substantially certain to suffer emotional distress." *Id.* at 79 ("inherent to the requisite state of mind . . . is the defendant's knowledge of at least the person who is substantially certain to suffer emotional distress"). Here, viewing Plaintiffs' allegations in the light most favorable to them, they have sufficiently alleged that the Car-Net representative was aware that, if anyone was to suffer emotional distress due to a mishandling of the situation, it was Plaintiffs. See *Kornick v. Goodman*, 242 N.E.3d 231 (Ill. App. Ct. 2023). Indeed, "[w]ithout knowledge of the Plaintiffs' identity, the [Car-Net] representative would have no way of knowing whose subscription account needed to be activated" and whose car needed to be found. Resp. at 14.

Accordingly, the Court denies Defendants' motions to dismiss [35] [40] [95].

Franklin U. Valderrama
United States District Judge

Dated: September 26, 2025

4